IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOVAN HOUSE, #319030 | * | |
| Plaintiff | | |
| v. | * | CIVIL ACTION NO. WDQ-09-929 |
| WARDEN BOBBY P. SHEARIN, et al. | * | |
| Defendants. | | |
| | *** | |

## **MEMORANDUM**

Jovan House ("House"), who is confined at the North Branch Correctional Institution ("NBCI"), filed a letter with the Court on April 13, 2009, raising a failure-to-protect claim regarding the denial of his request for NBCI protective custody assignment. Paper No. 1. House's correspondence was instituted as a 42 U.S.C. § 1983 civil rights action for injunctive relief. On April 24, 2009, he was ordered to file an amended complaint and the civil filing fee or an indigency motion. Paper No. 2. In addition, counsel for the state was ordered to file an immediate response which addressed House's custodial situation and all case management/security investigations into his assertions. *Id*.

On May 1, 2009, House filed another letter with the Court complaining that his safety is at risk at NBCI. Paper No. 3. His court-ordered Amended Complaint was received for filing on May 12, 2009. Paper No. 5. The document repeats the claims raised and relief sought in the original letter Complaint. House alleges that he cannot be safely housed in NBCI general population because of unnamed inmates who attempted to assault him at JCI and other unnamed inmates who threatened him and are gang "affiliates" of his co-defendants. Paper No. 5. House additionally claims, however, that on April 23, 2009, he was assaulted by cellmate Antonio Rodgers because he was viewed as a snitch and the "BGF (Black Gorilla Family) kills snitches." *Id*. He further contends that NBCI staff will not assist him in documenting his claims for investigation and have threatened to force him back into a double cell if he presses the issue that he was assaulted. Paper No. 5.

House fears that as a result of the filing of this action, NBCI personnel will place him in "compromising situations." *Id*.

On May 12, 2009, the state filed a show cause response, construed as a motion for summary judgment.  Paper No. 4.  On May 21, 2009, House was afforded notice of the Court's re-characterization of the show cause response and of his entitlement to file an opposition response with supporting materials.  Paper No. 8.  He was granted additional of time to file a responsive pleading.  *Id*.  The Court is in receipt of his Opposition.  Paper No. 9.

In his Opposition, House questions why his co-defendant Anthony Brown was only placed on his OBSCIS enemies list in March of 2009.  Paper No. 9.  He states that he remained on JCI protective custody until November 6, 2008, and that he was on segregation at JCI at the end of that year. *Id*.  House claims that he has filed remedies and forwarded information to his NBCI Case Manager alleging that he was assaulted by his cellmate on April 23, 2009, and will be at risk of future harm if placed back into general population.  *Id*.  He alleges that since the filing of his Complaint: (1) he was threatened with harm because he had been labeled a "snitch," (2) he was assaulted by his general population cellmate Antonio Rodgers, who tried to kill him; and (3) he was threatened that he would be killed by Rodgers's fellow BGF gang members. *Id*.

Having reviewed House's Opposition materials, on July 13, 2009, the Court ordered Defendants to respond to his Opposition and amended claims of an April 2009 assault and his placing NBCI staff on notice of the assault and threats from other inmates.  Paper No. 11. Supplemental materials have been received for filing.  Paper No. 12.

The case is ready for consideration and may be determined without oral hearing.  *See* Local Rule 105.6.  (D. Md. 2008).

Fed. R. Civ. P. 56(c) provides that:

2

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

House claims that he cannot be safely housed in general population at NBCI due to threats and assaults from BGF gang members, related to statements he provided against co-defendants who are gang affiliated. The Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994), described the standard for determining Eighth Amendment deliberate indifference as follows: "[A] prison official cannot be found liable under the Eighth Amendment…unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Thus, to succeed on such a claim, House must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) Defendants actually drew this inference; and (4) Defendants deliberately disregarded the apparent risk. *Id*.

Defendants claim that in January of 2002, House was convicted of murder in the first degree and conspiracy to commit murder in the killing of Baltimore City Police Detective Thomas G. Newman. Paper No. 4 at Ex. 1. House was removed from JCI protective custody in August of 2008 at the direction of the Warden because he had no enemies at JCI and his initial protective custody request was four years old.[1] *Id*. In December of 2008, House refused to lock in his cell, claiming that his criminal case was a high profile matter and the inmates on his D-Tier housing knew about the case. *Id*. He received a rule infraction for this misconduct, which was reduced to an incident report. House was transferred to NBCI in early 2009. In April of 2009, House refused to lock in his cell after returning from recreation, claiming that he was having problems on his tier and with his cellmate. *Id*. He was sanctioned with sixty days segregation for this action.

---

[1] Defendants assert that House had initially been placed on protective custody because he claimed that his life had been threatened due to the publicity of his case. Paper No. 4.

Defendants claim that House has three enemies on his OBSCIS enemy list. Paper No. 4. Two of the enemies are his co-defendants Raymond Saunders and Anthony Brown, neither of whom is housed at NBCI. The other enemy, Andre Travers, is also not housed at NBCI.

In his Opposition, House questions why co-defendant Anthony Brown was only placed on his OBSCIS enemies list in March of 2009. Paper No. 9. He claims that the day before he wrote this Court in April of 2009, he was threatened with harm because he had been labeled a "snitch," was assaulted by his cellmate, and was subsequently threatened that he would be killed by his cellmate's fellow gang members. House alleges that that he has forwarded information to his NBCI Case Manager alleging that he was assaulted by his cellmate on April 23, 2009, and will be at risk of future harm if placed back into general population. *Id*.

In their supplemental materials, Defendants claim there is no record of assaults or use of forced against House on April 23, 2009. Paper No. 12. Rather, they maintain that on that date House voiced suicidal ideation to staff and was escorted to a holding cell and placed in a suicide smock. House's case manager was placed on notice of House's allegations regarding the assault by cellmate Rodgers and threats of harm from Rodgers and nine other inmates. She arranged for House to see Lieutenant Thomas of the NBCI intelligence department. As a result, Lieutenant Thomas placed House on administrative segregation, finding that he was a possible candidate for protective custody or an Interstate Corrections Compact ("ICC") transfer. The ICC recommendation is currently pending before Division of Correction Headquarters.

The original and Amended Complaints set out a request for injunctive relief under the Eighth Amendment. Under Fourth Circuit law, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that, he is likely to success on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips

in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, ___ U.S. ___, 129 S.Ct. 365, 374-376 (2008).[2]

There is no dispute that House was convicted in 2002 for his involvement in a high-profile homicide of a Baltimore City Police Detective. His co-defendants, both of whom are on his enemies list, are at other Division of Correction facilities, as is his other known enemy. In response to his claims of assault and threats from other inmates in the BGF gang in April of 2009, House spoke to a NBCI intelligence officer and was placed on and remains confined to administrative segregation, pending a decision on his ICC transfer. House has been provided a protected custodial situation. Both NBCI intelligence and case management personnel are aware of his housing status and have acted on the need for security.

The court denies the requested injunctive relief and finds that Defendants are entitled to the entry of summary judgment. A separate Order follows.

Date: <u>September 16, 2009</u>                  _____/s/_____
                                                                    William D. Quarles, Jr.
                                                                    United States District Judge

---

[2] The previous Fourth Circuit balance-of-hardship test set out in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1997) is no longer to be applied when granting or denying preliminary injunctions. Rather, the standard articulated in *Winter* governs the issuance of such emergency relief. *See Real Truth About Obama, Inc. v. Federal Election Com'n,* 575 F. 3d 342, 346-47 (4th Cir. 2009).